121-1218-WC Ford Motor Company Appellant by Gina Penapinto v. Illinois Workers' Compensation Comm'n Nawanda Henry Appellee by Adam Scholl. Ms. Penapinto, did I pronounce that correctly? Yes. Okay, thank you. You may proceed. Good afternoon, may it please the court. This is an appeal taken on behalf of the employer. At issue, the petitioner was looking for authorization for a prospective surgery and for TTD benefits. There are three issues I'd like to bring forth for appeal on this. One is related to the accident and the credibility of the petitioner. Two is the causation and three is the modification of the TTD. The accident itself, the commission acknowledges and that there are multiple versions of what happened in this alleged accident. The question and the manifest weight of the entire record is that these discrepancies are not de minimis and they're not. Well, again, we're talking, isn't it ultimately up to the commission to decide what's de minimis on credibility and what isn't? Who gets to decide that? It is in the province of the commission to determine credibility. Yes, it is my contention that they do not, the majority does not say either way that she's credible or not credible, but in fact, just kind of brushes over the issue and says, oh, but she's a bad historian. And the discrepancies itself are de minimis. And I think a review of the record as a whole, it's not. They are factual issues that are different. Factual in that one of the descriptions is that she was crushed between two items. Other discrepancies are that she was bumped. Other discrepancies and germane to the second argument about causation is whether or not the nature of the accident was so forceful of a blow that caused her to do a rotational type that she rotated in a circle. And going into the second set of issues, causation, Dr. Dixon, one of her physicians, the one that is prescribing this prospective treatment, his opinion rises and falls on whether or not she had this rotational injury. She would have to have a forceful blow, so forceful that it caused her to rotate for now to have this neck component be related. He was cross-examined on that, and that is his opinion. She was asked directly this on cross-examination, did you rotate? And her answer was no. She did not give a history of a rotational injury to any of the other providers, nor did she offer that when she described the accident. So second issue is that I think that the causation is based on facts that are not consistent with the manifest weight of the evidence. It is not saying that it is an inference for you to say either way. It is objectively, she said it did not happen, and it is not in the other records that this was a rotational type of injury. And then third to the TTD, the commission revised the TTD up to match the allegations in the stipulation sheet. The one thing the arbitrator did do at the first level was he did pay attention to Respondent's Exhibit 9, which was an attendance record to when she worked and so what period she was off. The record will show when she was asked directly what days was she off regarding her lost time, she was unable to say what days she was off. So in the event that you find that TTD, that award of accident and then subsequent TTD is ordered, that the record is more complete with what the original arbitrator had found. Didn't the evidence point out that she had never received any treatment for her right shoulder or her cervical spine prior to the date of accident? I think that is correct. Yes, that is true. And that the commission heard all the discrepancies in her description of how she was injured, but was able to determine based on the fact she had never had any injuries to that part of her body prior and was consistently treated thereafter. And that what they consider to be de minimis, the different description she gave as to how she was injured, those two factors combined would make it very difficult for our court to determine that the commission's decision on credibility was against the manifest way. How do we get around that to come to the conclusion you'd wish us to come to? Okay, so I'm going to break it up further from that, okay? I don't that there was a finding of credibility. She was not found credible by the majority at all. They didn't specifically find her credible, but instead they said, well, she's a bad historian. If she had said, if the majority had said she was credible and just had a bad memory, that would be different. In this case, that finding is absent, unlike in the dissent where the dissenting commissioner said, no, she was not credible in how she presented. So that's the credibility portion of it. Yes, to rights, the record does not show that she had any previous complaints, that is true, okay? But the causation and now this subsequent type of treatment, because she had had three shoulder procedures prior to this, now they're looking for this anterior cervical discectomy. Dr. Welsh, yes, NIME said that the mechanism of injury that he was given, not a rotational injury, was not consistent with a cervical injury. Dr. Singh found with his examination that she, her examination did not show that this was a necessarily reasonable procedure for her. And Dr., most importantly, Dr. Dixon's is only if she rotated. And if she didn't rotate, then he, according to his deposition testimony, that this would not be related to the injury, it'd be related to something else. So answering your question, yes, those are two things that they considered, but I am submitting to this honorable court that that is against the manifest weight of the evidence in total, that she didn't rotate, it's not causal, the causation does not match what the description of the accident and the mechanism of injury is. And further, she has at least two or three other variations that do not encompass her having this rotational type. Ms. Pinto, you raised an interesting question in running through. The theme of express findings that she was credible, really didn't make any express findings either way. So my question to you is, can you call our attention to any case law that says the commission must make, in every case, an express finding saying we find the claim incredible, or we find the claimant incredible? Is the commission required to do that? No, I would, from everything that I they may not find, because of a lack of credibility, that may be a failure of proof, because of conflicting histories. And I think that is exactly the situation that we have here. On this issue of TTD, wasn't the problem here is that the attendance records that you introduced, the commission couldn't figure out what they said, because you didn't introduce any testimonies to read them. And they turned around and said they couldn't figure out whether the dates showed attendance or absence. I think that the commission decision, that is exactly what the commission decision says. That is not my representation of what the records, they are what they are. And I think that the arbitrator got it right. The periods that she did not work were the periods that he awarded. So what are we supposed to do? Reread the records and see if we can figure out whether it says attendance or absence? No, no. My prayer of relief was if you're going to find TTD, to reestablish what the arbitrator awarded and not what the commission. This threw out that exhibit totally and just went with the stipulation. And I would understand if there was no basis, meaning no exhibit. But in this case, there is the exhibit and the finding from the arbitrator. And you're totally absent that the petitioner didn't testify either way. She couldn't say which day she was off. She said she came back to full time work on the last day that they awarded the TTD for. So what are we to do with the stipulation? Why was it stipulated if it wasn't so? Well, the respondent. Respondent disputed the dates that were alleged to be part of the TTD. And I have the stipulation sheet here that she received short term and long term disability for the periods that she was off. Does that answer? Yeah. So in summary, the credibility issue is hand in hand with the accident, multiple versions of accident. The only version that supports this finding is that you would have to conclude that she rotated when she was hit or during this accident. She denied that she rotated. She did not present any other, nothing in the other records say that she rotated. And the basis on which the treating doctor who wants to go ahead and do this procedure is that it rises and falls on whether or not she rotated. And I think the manifest way to the record is not clear, clearly saying that she rotated. I think it is readily apparent the other way that you can't, that that is not the conclusion that you have, that she rotated, just based on Dr. Dixon. She contradicts it and the rest of the record also contradicts it. So I asked this honorable court to, one, reverse that there is no credible accident. And if that is not the case, then in a finding of accident that she did not establish causation related to this prospective procedure, because the basis for the ordering of this procedure is not consistent with the manifest weight of the entire record. And the doctor himself only finds that this would be a necessary and reasonable surgery if she rotated. And third, regarding the TTD, I think the commission overstepped in just throwing out that Exhibit 9 and going just with the allegation of the dates of her return to work when the petitioner herself could not testify to the day she was off. Very good. Thank you, counsel. You'll have time in reply. Mr. Scholl, you may respond. I may please the court. My name is Adam Scholl. I represent the appellee in this case, Ms. LaWanda Henry. I don't have to tell this court what manifest weight of evidence is and what the standard of review is here. But what does need to be established here is whether or not there was sufficient enough evidence for the commission to make the decision that they did. And it is our belief that the facts do clearly establish that. There is, from the very onset of the day of, there are histories that are given by this petitioner, Ms. Henry, right to her employer that she got injured. She filled out an X-ray report. She was subsequently taken by the emergency room of history and she gave histories throughout. There is no doubt that the verbiage that she used to describe the cart or the tug that she had varied. And I think it's because she didn't know the specific names of these various vehicles. But you cannot dispute the facts that something happened on that particular day and she got hit and injured by something. Even the driver that they introduced a statement, respondent introduced a statement, acknowledges that Ms. Henry said to him, ouch, you hurt me. Even though he disputes that he did it, she told him right at the time that it happened. But let's look at more than just what was told subjectively about this incident. Let's look at the objective evidence. That this woman sustained an injury to her shoulder. She's had a partial tear of the rotator cuff tear. She needed three, which was defined by an MRI, an objective diagnostic test. Clinically, she showed injuries to her shoulder. She required three separate surgeries to the shoulder to repair it as a result of the impact that she had from this day up. The next question is, well, there's a second aspect of this injury. You got a shoulder and you got a neck. Well, the neck was also addressed by the doctors. And from a clinical standpoint, she showed evidence of a neck injury. She showed radiculopathy from a clinical test. And from a diagnostic standpoint, she showed MRIs that showed disc protrusions in her cervical spine. She showed an EMG that showed that there is a radiculopathy that was emanating from the cervical spine. So both clinically and diagnostically, we know that this person had a neck injury. And as the justice said earlier, there's no evidence that she ever had these issues prior to this. So you look at the timing of the events. You look at from the very onset, she's making complaints and symptoms. We look at, you can look at the histories that were provided that all reflect that she was, something impacted her that day. And that explains why the commission constates essentially in their decision that stated, though there are minor variations in the name of which the petitioner referred to the card, they do not undermine the testimony overall. Now, even though they don't specifically say that this individual is credible, those statements to me when they say they do not undermine her testimony, essentially substantiates her credibility. They basically feel that there is enough evidence here that reflects that everything and all the histories all combined to show one thing, this person sustained an injury on this claim date. But those are specific reasons why we feel that this, everything about the commission decision should be supported based on, and that there's no manifestative evidence arguments been made by the respondent to overturn this. What about the issue of TTD? The issue of TTD is exactly, as you stated earlier, there's nothing in their exhibit that disproves her claim of, that she's entitled to benefits. As indicated in my brief, she was put on light duty. In fact, her light duty restriction went from five pounds to three pounds during the course of time. And there's no evidence to say that they accommodated it, even though they're unintelligible to anybody who's outside the Ford Motor Company. So we feel we substantiated our argument with regard to TTD. Now, I would like to address one other thing, if I may. Counsel makes mention, more reference to the cervical spine, about a rotational injury. Was there a rotational injury? So let me just, if I can, from my interpretation of the record, the petitioner stated she never specifically told the doctor she had a rotational injury. She didn't say she never had a rotational injury. She just said in testimony, I never told the doctor I had a rotational injury. When you look at the testimony of the doctor, Dr. Dixon, he basically stated, yeah, no one ever told me that. But based on my understanding of the mechanism of injury, that it's conceivable that she may have rotated when she got impacted by this. Again, it's, he's definitely taking an educated guess from his standpoint. But I think that explains to him why this person would have these symptoms, why this individual would have these symptoms from this, you know, this injury, and certainly didn't have them beforehand. So I think that substantiates that. In reference to Dr. Singh, Dr. Singh himself, he doesn't feel, he disagreed with Dr. Dixon with regard to the findings. But some of his disagreements are interesting because, one, a radiologist and Dr. Dixon both find pathology on the MRI, but he finds no pathology. The EMG says radiculopathy, but he says, I didn't find any radiculopathy, even though subsequent exams did show radiculopathy after he was seen by Dr. Singh. Dr. Singh, however, diagnosed as, well, she may have had cervical strain. That's what his diagnosis was. Well, if she didn't have an injury, how could she have a cervical strain, even from that standpoint? It seems to me there's an acknowledgement that something happened to her even by Dr. Singh's own accord. So I don't want to belabor this. I think my brief outlines the facts. I think my brief addresses the issues that were brought up by counsel. But I do not believe in any way that the Ford Motor Company has established that there is evidence that would establish, should prove that this panel should state that a decision should go the opposite way as to all issues. Any questions from the court? No, don't believe there are. Have you concluded, Mr. Shull? I am, and thank you for your time. Thank you. Ms. Panepinto, I'm sorry, you may reply. Okay. Something happened that day. The witness who testified on behalf of the employer acknowledged that she said, hey, you know, you hurt me. His testimony was he was moving carts by hand. He wasn't in one of those motorized buggies, carts, whatever you're going to call them, and that he didn't feel the impact. So that's a set of facts that, or facts that conflict that are part of the manifest weight of all of the evidence in there. She made consistent complaints. That's right, multiple complaints. Right away, she went, she made a written report of what happened. And I'm not talking about the name of the cart, the Dunnist cart, the whatnot. It's the size and the nature of the material that allegedly made contact with her and the initial complaints that she had. She went in and she changed those written reports that were then added into evidence. Further, in the ER records, she denies numbness and tingling, and we're talking about radiculopathy at this point. Denied it. Yes, there is a dispute between the doctors. Dr. Singh does the examination, doesn't find it consistent with radicular findings, looks at the diagnostic testing, and says, this looks like it could be erroneous positive based on her presentation. The flip, also interesting related to this case, is that this petitioner on direct examination, while her own attorney was doing direct examination, denied that Dr. Singh even examined her. So something was amiss in her relationship with how she presented to Dr. Singh. She denied that he even, which I think the record will reflect that that is not true, that there was a deposition that he testified to the examination on her part. Regarding the radiculopathy and the cervical component, which is much later, yes, she had three shoulder surgeries. The records reflect that she denied numbness and tingling. Her testimony on direct examination is that when she got hit by whatever this material thing was, that she numbed up on the full on her right side. So using layman terms for radiculopathy. I think we lost Justice Holder. Yes. Okay. So sum up. Should I keep going? You might want to wait for just a second. He's back now. He's back. So in sum, okay, so if we can establish that she made a report and something happened, okay, the petitioner bears the burden to prove with specificity, not only that something happened, that it was a compensable accident. In this case, she's all over the board. I think the record, you are able to just look at all the reports and say that you cannot tell with specificity what happened other than something happened on this day. Okay. And further, getting away from accident, getting into causation, I don't, she has not had previous, even acknowledging the fact that she had not had previous shoulder or neck complaints, cervical complaints. It doesn't fit with what the doctor, Dr. Dixon, even if he is using his expertise to say she must have rotated for this to happen, even if he's building that in there, that that is his opinion that she would have had to have a rotational injury. She herself is denying that that happened. I think that that is not an inference. It's facts that can't be ignored, that is in itself the most important part of the testimony and it can't be ignored. And I would just ask this that this recommendation for prospective surgery does not match with the facts. Any questions from the court? Don't believe there are any. So thank you, counsel. Thank you, counsel, both for your arguments in this matter this afternoon.